IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

MELVIN H. NIXON

VS.                                              CIVIL ACTION NO. 1:07CV303-SA-DAS

MICHAEL J. ASTRUE,
Commissioner of Social Security

## REPORT AND RECOMMENDATION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the applications of claimant Melvin H. Nixon for disability benefits under Title II and supplemental security income benefits under Title XVI. The parties have not consented to have a magistrate judge conduct all the proceedings in this case. Therefore, the undersigned submits this report and recommendation to the United States District Judge.

## I. FACTUAL AND PROCEDURAL HISTORY

The claimant was born on April 26, 1953 and was fifty-three years old at the time of the hearing before the administrative law judge ("ALJ"). The claimant has a high school education and additional training in jewelry repair. He previously worked as a watch repairer. On August 11, 2003, the claimant filed an application for disability benefits and supplemental security income, alleging an onset of disability as of March 30, 2003. His application was denied both initially and upon reconsideration, and the claimant timely requested and was granted a hearing before an ALJ. At the hearing, the claimant contended that because he had diabetes, peripheral neuropathy in hands and feet, degenerative disc disease, hypertension, Charcot feet, and

1

depression, he was disabled and unable to work. Nevertheless, in a decision dated June 30, 2006, the ALJ found the claimant not disabled. Contrary to his claim of disability, the ALJ found the claimant had the residual functional capacity to perform jobs that exist in significant numbers in the national economy. The ALJ's decision rested as the final decision of the Commissioner on September 26, 2007 when the Appeals Council denied the claimant's request for review. The ALJ's final decision is now ripe for review under section 205(g) of the Social Security Act. 42 U.S.C. § 205(g).

## II. STANDARD OF REVIEW

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971)*; Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court

2

may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

### III. DISCUSSION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2] First, claimant must prove he is not currently engaged in substantial gainful activity.[3] Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1.[5] Fourth, the claimant bears the

---

[1] *See* 20 C.F.R. §§ 404.1520 (2008).

[2] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[3] 20 C.F.R. §§ 404.1520(b) (2008).

[4] 20 C.F.R. §§ 404.1520(c) (2008).

[5] 20 C.F.R. §§ 404.1520(d) (2008). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1525 (2008).

burden of proving he is incapable of meeting the physical and mental demands of her past relevant work.[6] If the claimant is successful at all four of the preceding steps the burden shifts to the Commissioner to prove, considering claimant's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work.[8]

In the present case, the claimant makes four arguments, alleging the ALJ erred when he: (1) failed to explain why the claimant did not meet one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1; (2) when he relied on the opinion of the consultative examiner and discounted the opinions of Drs. Guthrie, Muhlbauer, Bennett, and Flannery; (3) when he failed to provide an explanation as to why he did not give controlling weight to the opinion of his treating physician, Dr. Al Flannery; and (4) when he failed to provide adequate reasoning for his refusal to give appropriate weight to the opinion of the consultative examiner, Dr. Glenn Bennett.

The court recommends that the ALJ's decision be affirmed as to all of these issues and will address each of the arguments in turn.

### 1. Specific Obligations of the ALJ with Respect to the Listings

In the present case, the ALJ found the claimant did not meet or equal a listed impairment. The claimant argues the ALJ erred when he did not specify what listings he had considered or the reasons the claimant failed to meet the criteria of any particular impairment. It is well

---

[6]20 C.F.R. §§ 404.1520(e) (2008).

[7]20 C.F.R §§ 404.1520(f)(1) (2008).

[8]*Muse*, 925 F.2d at 789.

established that the ALJ is required to discuss the evidence offered in support of the claim and explain why the claimant was not considered disabled at Step Three. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). After examining the ALJ's opinion, however, it is clear he considered the evidence in detail before making his decision. It is similarly true, however, that he did not explain why the claimant failed to meet the criteria of any particular impairment. Indeed, the ALJ did not refer to a single listing in his opinion. Summarily concluding that a claimant fails to meet or equal the criteria of an unspecified listing is insufficient because it does not permit meaningful judicial review. *Id*. Nevertheless, Fifth Circuit precedent does not require remand unless substantial rights have been affected. *Id.*; *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). The ALJ's failure to set out a basis for his decision at Step Three affects substantial rights when the claimant appears to have met his burden to demonstrate that he meets or equals a listing. *Audler*, 501 F.3d at 449. Here, the claimant did not meet this burden.

The claimant alleges that the ALJ erred when he failed to explain why the claimant did not meet or equal the medical listing found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.02(B). Section 1.02(B) provides in its entirety:

> 1.02 *Major dysfunction of a joint(s) (due to any cause):* Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> \* \* \*
> B. Involvement of one major peripheral joint in each upper extremity (*i.e.,* shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Part 404, Subpt. P, App. 1, § 1.02(B) (2008).  After examining this listing, it is clear the ALJ did not address the listing because the listing applies only when a "joint in *each* upper extremity" is affected.  *Id.* (emphasis added).  Aside from the claimant's testimony which the ALJ found to be lacking in credibility, there is no evidence in the record at all that the claimant had difficulty with the joints in his left hand.  Even the claimant testified as follows:

    Q.  Now, tell us about your, about your hands.  How do they . . . .

    A.  Well, I have what they call diabetic neuropathy.  I had pain; and then, it goes from pain to numbness.  My index finger has completely just almost frozen in the joints, probably starting arthritis, and the neuropathy, too.  And I have a lot of pain from moving it.

    Q.  And that's your right hand?

    A.  The right hand, yes, sir.

    Q.  Okay.

    A.  The left hand, I'm able to use it some.  It hasn't been affected quite as much.  The index finger, I can still bend.  But I'm not – I'm right-handed, and I use my left hand just as an accessory, or in addition to the right.  You have – like I say, in my work, you had to use both hands.  But my right hand was the prominent hand to use.

(Tr. at 360).

While the claimant did continue that his left hand has "numbness," this clearly does not qualify under § 1.02 that requires "findings on medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint."  Moreover, Dr. Bennet, to whom the claimant refers with this portion of his argument, found that he had "5/5 manual dexterity on the left" hand.  Accordingly, because there was no evidence before the ALJ to cause him to consider § 1.02, and because the evidence submitted actually refuted the claimant's present allegation, the court recommends the ALJ's decision as to this issue be affirmed.

6

## 2. Consultative Examiner

Next, the claimant argues the ALJ erred when he relied on the opinion of the consultative examiner and discounted the opinions of Drs. Guthrie, Muhlbauer, Bennett, and Flannery. Specifically, the claimant contends that the consultative examiner's report found at exhibit 7F was the only medical source to find the claimant could physically function in the workplace. According to the claimant, the other four physicians all consistently found the claimant incapable of performing such activity, and for the ALJ to base his opinion on the one rather than the four was error. The court disagrees with the claimant for two reasons: First, the claimant's depiction of the four physicians' opinions were not entirely accurate; and second, the court finds that while the consultative examiner's report may well be substantial evidence to support the ALJ's decision, there was more than simply that report utilized by the ALJ.

As for the claimant's depiction of the opinions provided by the four physicians other than the consultative examiner, the court would point first to the records of Dr. Guthrie. The only evidence submitted with respect to Dr. Guthrie showed only that the claimant had "mild degenerative disc narrowing at the L3-4, L4-5 and L5-S1 level." There is nothing to suggest that Dr. Guthrie opined this mild degeneration would cause the claimant to be disabled.

As for Dr. Muhlbauer, the neurosurgeon who operated on the claimant's back in February 2004, the claimant contends that because Dr. Muhlbauer performed surgery on him after the consultative examiner found no significant problems with his back destroys any credibility the examiner may have had. The court does not agree, however, because nothing submitted from Dr. Muhlbauer supports a finding of disabled. Dr. Muhlbauer did find the claimant needed back

surgery and performed the surgery. However, subsequent to the surgery, Dr. Muhlbauer reported that the claimant had "no difficulties" and had been active. The ALJ noted these findings specifically in his opinion.

Dr. Flannery provided a medical source statement that provided nothing other than bald diagnoses of degenerative disc disease, diabetic peripheral neuropathy, carpal tunnel syndrome, bilateral Charcot feet, hyperkalemia, and depression. The remainder of the medical source statement, while checking the boxes, provided no explanations other than the decidedly unhelpful "see overleaf." The court can only assume the "overleaf" was either the initial page providing the bald diagnoses or the cover letter that stated Dr. Flannery believed the claimant to be "100% disabled."[9] In either event, the reference provided no assistance in determining whether the ALJ or this court could make a finding of disabled.

However, the ALJ did look to the consultative examiner's report and specifically stated on the record he relied upon it. That report provided specifically that the claimant could occasionally lift fifty pounds and frequently lift twenty-five pounds. The report also provided that the claimant could sit, stand, or walk for six hours out of an eight-hour workday. In addition, the ALJ looked to Dr. Crenshaw's report. After a detailed examination, Dr. Crenshaw noted that the claimant had significant diabetes and significant lower back radiculopathy. But Dr. Crenshaw also found the claimant had "no problems sitting, standing, walking, lifting, hearing, speaking, or handling objects while in clinic." The ALJ noted these findings as well.

While the reports upon which the ALJ relied may differ in some respects from those to

---

[9]An ALJ need not justify a decision giving little weight to a physician's opinion that a claimant is "disabled" or "unable to work," because such decisions are reserved for the Commissioner. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

which the claimant refers, this court is not able to "reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the ALJ, even if the evidence preponderates against the ALJ's decision." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). This court looks only to whether the ALJ applied the correct legal standards and whether substantial evidence supports his decision. As discussed *supra*, substantial evidence is not an especially difficult standard for the ALJ to meet. Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In the present case, the court finds the combination of Dr. Crenshaw's report along with the consultative examination and the notations provided by the additional physicians noted above provide sufficient evidence that a reasonable mind might accept as adequate to support the ALJ's decision and far more than a mere scintilla. Accordingly, the court recommends the ALJ's decision be affirmed as to this issue.[10]

### 3. Treating Physician

Next, the claimant contends the ALJ erred when he failed to provide an explanation as to why he did not give controlling weight to the opinion of his treating physician, Dr. Al Flannery. In support of his argument, the claimant refers to *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).

---

[10]The court notes that the claimant also apparently contends the ALJ erred by not finding him disabled based upon a mental disability. While the claimant does concede that "his mental condition is not the primary reason for his disability. . . ." he does not point to any evidence to support his claim at all. In his brief, the claimant contends he was not "himself" on the day Dr. Morris examined him, and he has provided an explanation as to his behavior, but this is not evidence of a disability -- that evidence goes solely to his credibility. Because the claimant provided no argument and pointed to no evidence to refute the ALJ's finding, the court recommends that the ALJ's finding as to this issue be affirmed.

The *Newton* decision held specifically that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton* 209 F.3d at 453. Those criteria provide that the ALJ consider: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence supporting the opinion; (4) consistency of the treating physician's opinion with the record as a whole; (5) whether the opinion is that of a specialist; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2).

While it is undisputed that the ALJ in the present case did not refer specifically to the *Newton* decision, such a procedure is not mandated. After examining the ALJ's opinion, however, it is clear he addressed each of the factors provided in the Code. Specifically, the ALJ noted the length of the relationship the claimant had with Dr. Flannery when he stated the claimant saw Dr. Flannery in February 2004 and did not see him again until November 2005. The ALJ went on to detail additional examinations done in January and finally in May 2006. As for the remaining factors, it is clear the ALJ found very little relevant evidence supporting Dr. Flannery's opinion and also found his opinions were inconsistent with the record as a whole. Specifically, the ALJ explained:

> Dr. Flannery expressly cited in support of his assessed limitations the claimant's supposed degenerative disc disease with radicular pain and his supposed bilateral carpal tunnel syndrome, but neither his own minimal treatment records nor the remainder of the documentary record substantiates these expressed citations. The documentary record presents no apparent medical foundation for any diagnosis of bilateral carpal tunnel syndrome at all.

10

(Tr. at 22). Additionally, as discussed *supra*, Dr. Flannery's reports were virtually devoid of any evidence save bald assertions with no support whatever.

Accordingly, because the ALJ provided a detailed explanation as to why he rejected the opinion of the claimant's treating physician, the court finds the third argument to be without merit and recommends the ALJ's decision be affirmed as to this issue.

### 4. Dr. Bennett

Finally, the claimant contends the ALJ erred when he failed to provide adequate reasoning for his refusal to give controlling weight to the opinion of the consultative examiner, Dr. Glenn Bennett. Dr. Bennett opined that the claimant could stand/walk without interruption for only ten minutes and one hour during an eight-hour workday, and that he could sit for only thirty minutes without interruption and only three hours during an eight-hour workday. According to the claimant, the ALJ inappropriately ignored these findings. However, as discussed *supra*, this court may not reweigh the evidence. This court is charged with looking only to determine whether substantial evidence supports the ALJ's decision. *Perez v. Barnhart*, 415 F.3d 457, 460 (5th Cir. 2005). This is the court's task regardless of whether it would have decided the case differently or not. In the present case, the ALJ found the claimant could stand/walk and sit for six hours during an eight-hour workday, and there is substantial evidence provided by Dr. Crenshaw to support that finding.

Moreover, the court found the claimant lacked credibility, and this was specifically apparent when Dr. Bennett examined him. The court specifically noted:

> The record evidence presents no apparent medical etiology for the claimant's presentation of nearly absent right grip strength to Dr. Bennett. The claimant presented full, five of five bilateral grip

> strength to Dr. Crenshaw in November 2003 and an entirely normal examination of his upper extremities to Dr. Muhlbauer in August 2004. The claimant's subjective presentation under these circumstances of "almost no" right grip strength to Dr. Bennett in November 2005 appears lacking in any apparent medical etiology and therefore lacking in credibility. Dr. Bennett expressed the speculative impression of diabetes with neuropathy in the right hand, but the treating records entirely fail to substantiate this asserted explanation for the claimant's presentation. The record evidence similarly presents no apparent medical etiology for the claimant's presentation of poor balance to Dr. Bennett. The claimant presented a normal gait to Dr. Crenshaw in November 2003 and a steady and non-antalgic gait to Dr. Muhlbauer in August 2004. The claimant's subjective presentation under theses circumstances of poor balance and the requirement of a cane to Dr. Bennett in November 2005 appears lacking in any apparent medical etiology and therefore lacking in credibility.

(Tr. at 21). Accordingly, because there was substantial evidence to support the ALJ's decision to give Dr. Bennett's opinion limited weight, and because the ALJ detailed why he believed the claimant lacked credibility, the court recommends the ALJ's opinion should be affirmed as to this issue.

The parties are referred to 28 U.S.C. §636(b)(1)(B) and Fed. R. Civ. P. 72(b) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within ten (10) days of this date and "a party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

Respectfully submitted, this the 5th day of February 2009.

                                            /s/ David A. Sanders
                                            UNITED STATES MAGISTRATE JUDGE